No. 24-1244

In the United States Court of Appeals
for the Sixth Circuit

———————

# United States of America,

Plaintiff-Appellant,

v.

# Ronald Norvale Williams,

Defendant-Appellee.

———————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 23-cr-20201 (Hon. Judith E. Levy)

———————

## Brief for the United States

———————

Dawn N. Ison
United States Attorney

William J. Valliencourt, Jr.
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9626
William.Vailliencourt@usdoj.gov

# Table of Contents

Table of Authorities.................................................................ii

Oral Argument Is Unnecessary ..............................................iv

Jurisdictional Statement.........................................................1

Introduction ...........................................................................2

Issues Presented.....................................................................3

Statement of the Case ............................................................4

Summary of the Argument .....................................................8

Argument................................................................................9

I.  Section 922(g)(1) is constitutional as applied to Williams—a dangerous murderer who violated the terms of his parole by possessing a firearm........................................................9

    A.  The Supreme Court has clarified how to analyze Second Amendment challenges to gun regulations...............9

    B.  Under Sixth Circuit precedent, § 922(g)(1) is constitutional as applied to dangerous people. ...................12

    C.  The burden falls on a defendant to show that he was not dangerous when he possessed the firearm. ..........................16

    D.  Williams cannot show that he is not dangerous. .................20

Conclusion .............................................................................25

Certificate of Service ............................................................26

Relevant District Court Documents.......................................27

# Table of Authorities

## Cases

*Carroll v. City of Cleveland*, 522 F. App'x 299 (6th Cir. 2013)..............18

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..........................9, 13

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022) ................................................................. passim

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) ............................11

*United States v. Gailes*, 118 F.4th 822 (6th Cir. 2024)..........................15

*United States v. Goins*, 118 F.4th 794 (6th Cir. 2024) .................. passim

*United States v. Gore*, 118 F.4th 808 (6th Cir. 2024) ......................12, 15

*United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024)
   (after remand) ................................................................14

*United States v. Loney*, 331 F.3d 516 (6th Cir. 2003)..............................9

*United States v. Moore*, 111 F.4th 266 (3d Cir. 2024) .......... 15, 18, 19, 23

*United States v. Parham*, 119 F.4th 488 (6th Cir. 2024)........................22

*United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024)...............18

*United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024)...... passim

*United States v. Salerno*, 481 U.S. 739 (1987)..................................11, 12

*United States v. Taylor*, No. 23-5644, 2024 WL 4891756
   (6th Cir. Nov. 25, 2024)................................................................23

*United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) ............. passim

**Statutes**

18 U.S.C. § 922(g)(1)...........................................................................passim

18 U.S.C. § 922(g)(8)...........................................................................10, 11

18 U.S.C. § 1111(b)...........................................................................21

18 U.S.C. § 3231 ...........................................................................1

18 U.S.C. § 3731 ...........................................................................1

**Other Authorities**

Chapter 9, 1 Congress, Public Law 1-9. 1 Stat. 112 (1790)...................21

Death Penalty Information Center,
    https://deathpenaltyinfo.org/states-landing (27 states have
    the death penalty) (last visited December 2, 2024)........................21

## Oral Argument Is Unnecessary

This case is squarely governed by intervening, binding Sixth Circuit precedent. Oral argument is unnecessary.

## Jurisdictional Statement

The district court had jurisdiction under 18 U.S.C. § 3231 because the case involves an "offense[] against the laws of the United States." This Court has jurisdiction under 18 U.S.C. § 3731 because the government is appealing "an order of a district court dismissing an indictment." The order was entered resulting from a pretrial motion to dismiss and before jeopardy attached. Thus, appeal is permissible because the double jeopardy clause of the United States Constitution does not prohibit further prosecution. *Id*.

The district court entered its order on February 22, 2024 (R.29: Opinion and Order, 390–462. The United States timely appealed. (R.34: Notice of Appeal, 516).

## Introduction

Ronald Williams murdered two people by shooting them in the back. One was a pregnant woman trying to flee from him when Williams shot her multiple times. Convicted of both first-degree murder and second-degree murder, he was on parole from a life sentence—and prohibited by that parole from possessing a gun—when police found him in possession of a loaded gun and cocaine. That led to him being charged here as a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Despite being a convicted double-murderer on parole for those crimes, Williams moved to dismiss the indictment. He claimed that § 922(g)(1) is unconstitutional as applied to him under the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The district court—refusing to consider the nature of his prior convictions or any circumstances specific to Williams—agreed and dismissed the indictment. Under intervening Sixth Circuit precedent, that decision must be reversed.

## Issues Presented

Is § 922(g)(1) constitutional under the Second Amendment as applied to Williams, a convicted double-murderer on parole and subject to a condition that he not possess firearms?

## Statement of the Case

This case began when Ronald Williams—a convicted double-murderer on parole—was caught with drugs and a gun in his car following a traffic crash. Police who responded to the incident found a stolen, loaded pistol on the floor in the front seat. (R.19-1: App. to Gov't Supp. Br., 158–59). They also found two baggies containing about 23 grams of cocaine in Williams's backpack. (*Id*., 159, 162–63). According to Williams, he bought the gun because he was scared after the daughter of one of his murder victims gestured at him. (*Id*., 156, 162). He knew that he was prohibited from possessing a gun. (*Id*., 161).

Williams had previously been convicted of first-degree murder and second-degree murder, and he was on parole for those crimes at the time. (R.13: Motion to Dismiss, 33). The facts underlying his murder convictions are jarring. While sitting in the back seat of a car, Williams shot and killed the front passenger. (R.19-1: App. to Gov't. Supp. Br., 149). Williams then shot the driver, who was pregnant, three times as she fled down the street trying to escape. (*Id*.). The driver died in the emergency room. (*Id*., 150; R.22-6: Williams Second Supp. Br., 331). Williams claimed that he was acting in self-defense and expressed no

4

remorse for his actions. (R.19: App. to Gov't. Supp. Br., 149). And even before these murders, Williams had been arrested for having a gun in school, had several police contacts involving weapons and assaults, and was an admitted drug dealer. (*Id.*).

In connection with the murders, Williams received a sentence of 25 to 60 years for first-degree murder, a life sentence for second-degree murder, and a consecutive two-year sentence for possessing a firearm during the commission of a felony. (*Id.*, 169–71; R.18: Williams First Supp. Br., 95). Paroled in late 2019 for a four-year-term, Williams was subject to a condition that he not possess firearms. (R.19-1: App. to Gov't. Supp. Br., 152–53). It was during that parole that Williams possessed the firearm at issue here.

A grand jury indicted Williams on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (R.1: Indictment, 1–3). He consented to detention pending trial. (R.8: Consent Order of Detention, 15).

Williams later moved to dismiss the indictment, claiming that § 922(g)(1) was unconstitutional as applied to him under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (*Id.*, 29–55;

R.18: Williams First Supp. Br., 94). The United States responded, and both parties provided supplemental briefing at the district court's request. (R.16: Gov't Resp., 59–79; R.17: Order for Supp. Briefing, 87–92; R.18: Williams First Supp. Br., 94–96; R.19: Gov't Supp. Resp., 97–145; R.19-1: App. to Gov't. Supp. Br., 146–74; R.22: Williams Second Supp. Br., 181–370).

In a 73-page opinion, the court granted the motion to dismiss, finding that § 922(g)(1) is unconstitutional as applied to Williams. (R.29: Opinion, 390–462). It considered only Williams's as-applied challenge, rejecting his later request to consider a facial one as well. (*Id.*, 392 n.3). The district court acknowledged Williams's two prior murder convictions as well as the parole condition that he not possess firearms. (*Id.*, 392 1 n.2, 410 n.16). But in assessing Williams's as-applied challenge, the court considered only those facts alleged in the indictment—i.e., that he was a convicted felon who possessed a firearm. (*Id.*, 422–24). The court did so "in recognition of the current status of his criminal case and out of respect for his rights." (*Id.*, 422). The court refused to consider any facts "absent from the indictment, such as that

[Williams] was on parole, that the gun was stolen, and that [Williams] was in possession of certain drugs." (*Id.*, 425).

The court found that the government failed to identify under *Bruen* "a distinctly similar historical regulation" that categorically restricted felons from possessing firearms. (*Id.*, 431). It further found that the government failed to meet *Bruen*'s "relevantly similar" standard as well. (*Id.*, 433–62). The government appeals. (R.34: Notice of Appeal, 516).

## Summary of the Argument

Under this Court's recent decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), 18 U.S.C. § 922(g)(1) is valid on its face and as applied to dangerous persons. In addition, as held in *United States v. Goins*, 118 F.4th 794 (6th Cir. 2024), an as-applied challenge must be rejected when a defendant possessed a firearm while on probation and subject to a condition that he not possess firearms.

Here, Ronald Williams had previously committed society's most violent and dangerous offenses—first and second-degree murder—and was sentenced to life in prison. Those convictions alone establish beyond question that Williams was dangerous. Moreover, he was on parole for those crimes and possessed a gun in violation of a parole condition that he not possess firearms.

On this record, the district court's order finding that § 922(g)(1) was unconstitutional as applied to Ronald Williams is contrary to both *Williams* and *Goins* and must be reversed.

# Argument

## I.  Section 922(g)(1) is constitutional as applied to Williams—a dangerous murderer who violated the terms of his parole by possessing a firearm.

A district court's conclusion that a statute is unconstitutional is reviewed de novo. *United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003).

### A.  The Supreme Court has clarified how to analyze Second Amendment challenges to gun regulations.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. *Id*. at 635. But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id*. at 626. As the Court explained, "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id*. at 626-27 & n.26.

In *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court held that the Second Amendment protects the right of

"ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." 597 U.S. 1, 9–10 (2022). *Bruen* struck down New York's "proper-cause requirement" to obtain a license to carry a handgun outside the home because the law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 71. *Bruen* "reiterate[d]" the "standard for applying the Second Amendment," explaining that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 24. And when a regulation burdens presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

In *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), the Supreme Court examined a Second Amendment challenge to 18 U.S.C. § 922(g)(8), which prohibits a person subject to a domestic violence restraining order from possessing a gun. There, the Supreme Court reaffirmed that *Bruen* requires a court to "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id*. at 1898 (quoting *Bruen*, 597 U.S. at 29). Even the dissent

10

acknowledged this as the appropriate standard. *Id*. at 1933, 1944 (Thomas, J., dissenting). As *Bruen* explained, "the lack of a distinctly similar historical regulation" is merely "relevant evidence" to consider in assessing whether the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 597 U.S. at 26–27. It's not a different or more demanding standard. *See United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024) ("This 'bifurcated' approach has been rejected by the Supreme Court."). As the Supreme Court explained in *Rahimi,* it never "meant to suggest a law trapped in amber," and it reaffirmed that *Bruen* should not be read to require courts to look for an historical twin. *Rahimi*, 144 S. Ct. at 1897.

Turning to Rahimi's challenge, the Supreme Court held that a defendant raising a facial challenge must "establish that no set of circumstances exists under which the Act would be valid." *Id*. at 1898 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The Court had "no trouble concluding" that § 922(g)(8) was facially constitutional because Rahimi could not establish that the statute had no valid applications. *Id*. at 1902. It further held that the statute "can be lawfully applied to Rahimi" because "[o]ur tradition of firearm

11

regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*.

### B. Under Sixth Circuit precedent, § 922(g)(1) is constitutional as applied to dangerous people.

Against that backdrop, this Court recently decided *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). There, this Court held that a convicted felon falls within the "people" protected by the Second Amendment and thus satisfies *Bruen*'s first step. *Id*. at 648–50. As to the second step, however, this Court identified a robust historical tradition of gun regulation that supported disarming convicted felons. *Id*. at 650–57. And because—just as in *Rahimi*—the statute is not invalid in *all* applications, "§ 922(g)(1) is not susceptible to a facial challenge." *Id*. at 657 (citing *Salerno*, 481 U.S. at 745); *see also United States v. Gore*, 118 F.4th 808, 811 (6th Cir. 2024) (citing *Rahimi* and *Salerno*). In fact, this Court held that "most applications of § 922(g)(1) are constitutional." *Williams*, 113 F.4th at 657. Engaging in a detailed historical analysis of English history, colonial practice, and the Founding Era, this Court found that "governments in England and colonial America long disarmed groups that they deemed to be

12

dangerous." *Id*. Those groups "posed a fundamental threat to peace," so they "had to be kept away from arms." *Id*. As a result, "governments labeled whole classes as presumptively dangerous." *Id*. Acknowledging that such an "evaluation was not always elegant," this Court recognized that "there is no doubt that governments have made such determinations for centuries." *Id*. "Each time, however, individuals could demonstrate that their particular possession of a weapon posed no danger to peace." *Id*. Accordingly, "legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity" to make an individualized showing that he himself is not actually dangerous." *Id*. at 663. Thus, a defendant raising an as-applied challenge must show that he is not dangerous to prove he "falls outside of § 922(g)(1)'s constitutionally permissible scope." *Id*. at 657. The government maintains that § 922(g)(1) is constitutional in all of its applications, and not just as applied to "dangerous" people. *Id*. at 663–65 (Davis, J., concurring in judgment) (the presumption of lawfulness in *Heller* and *Rahimi* is enough to reject an as-applied challenge to § 922(g)(1)); *see also United States v. Jackson*, 110 F.4th 1120 (8th Cir.

13

2024) (after remand) (rejecting felony-by-felony litigation after *Rahimi*).
Nonetheless, *Williams* confirms that the district court here erred in
concluding that § 922(g)(1) is unconstitutional as applied to Ronald
Williams. After *Williams*, this Court provided further guidance on
assessing dangerousness in *United States v. Goins*, 118 F.4th 794 (6th
Cir. 2024). Goins possessed a firearm while on a four-year term of
probation for fourth-offense drunk driving, drunk driving on a
suspended license, and possession of a controlled substance—all
punishable by more than a year in prison. *Id*. at 796 & n.1. One of the
terms of his probation was that he not possess firearms. *Id*. In addition
to those felony convictions, Goins had a criminal history going back ten
years. *Id*. at 796–97, 804. That history, not all of which resulted in
convictions, consisted of numerous instances of drunk driving, public
intoxication, and criminal mischief, and this Court also considered the
circumstances of those offenses, like causing an accident. *Id*. at 797.
*Goins* illustrates the broad scope of the dangerousness inquiry. It
doesn't require violence or even direct physical threats. Even
misdemeanor-level conduct, like drunk driving, is relevant because it
endangers the public. *Id*. at 804. As this Court explained, "Goin's

14

history of drug use—particularly driving under the influence—is dangerous conduct; ergo his Second Amendment rights may be regulated temporarily while he is on probation under *Rahimi* and … *Williams*." *Id*. at 801 n.5. And misdemeanor acts of domestic violence also constitute dangerous conduct that justifies disarming a person. *See United States v. Gailes*, 118 F.4th 822, 828, 830 (6th Cir. 2024). In short, "the totality of the facts" demonstrated that "Congress could lawfully disarm Goins at the time he possessed the firearm." *Goins*, 118 F.4th at 805.  That judgment was further supported by the fact that Goins was on probation at the time. "In addition to disarming the dangerous, our nation's historical tradition of forfeiture laws, which temporarily disarmed convicts while they completed their sentences, also supports disarming those on parole, probation, or supervised release." *Id*. at 801–02 (citing *United States v. Moore*, 111 F.4th 266, 269–72 (3d Cir. 2024)). Likening a probation condition to restricting a person indicted for a felony offense, this Court held that depriving a convicted felon of his "Second Amendment right as a part of his probation for his felony offense … comports with … historical tradition." *Id*. at 803 (citing *Gore*, which upheld § 922(n) prohibiting those under

15

felony indictment from receiving a firearm). *Goins* offers further reason to reverse the judgment here.

### C. The burden falls on a defendant to show that he was not dangerous when he possessed the firearm.

*Williams* explained how a court should determine whether a defendant can prove that he is not dangerous. The focus is "on each individual's specific characteristics." *Williams*, 113 F.4th at 657. The inquiry "necessarily requires considering the individual's entire criminal record—not just the offense for purposes of § 922(g)(1)." *Id.* at 657–58 & n.12 ("[C]ourts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness."). Focusing on an individual's "characteristics" makes it a broad inquiry, not a categorical approach. *Id.* at 660. While "in many instances … the dangerousness will be self-evident," the inquiry is "fact-specific" and accounts for the "unique circumstances of the individual defendant," a standard that suggests few limitations other than relevance. *Id.* And the facts underlying prior convictions should be considered as well, just as they were in *Williams*. *Id.* at 662 (describing facts of prior robbery and felon-in-possession convictions).

16

To assess dangerousness, *Williams* identified three classes of crimes—each with a different impact on the dangerousness calculus. The first class of offenses—crimes against the person—"speak directly to whether an individual is dangerous." *Id*. at 658. These are "dangerous and violent crimes like murder, rape, assault, and robbery." *Id*. Although labelling it an "open question," this Court suggested that "crimes in this bucket are dispositive [because it] is hard to see how someone who commits such a dangerous and violent act may overcome the presumption that they are dangerous." *Id*.  The second category of crimes—while not strictly crimes against the person—still "pose a significant threat of danger." *Id*. at 659. The threat may not involve "an immediate and direct threat of violence against a particular person," but they pose a danger to the community and often lead to violence. *Id*. For example, crimes like drug trafficking and burglary are especially dangerous because "they put someone's safety at risk, and thus, justify a finding of danger." *Id*. The final category are crimes like mail fraud or making false statements. *Id*. This Court described this category as "the most challenging to address" because these crimes "cause no physical harm to another person or the community," and it suggested that "many

17

of these crimes don't make a person dangerous." *Id*.  This Court emphasized that courts can "consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction." *Id*. at 659–60. This includes *any* convictions as well as their underlying facts. *Id*. at 660. And the categorical approach does not apply. *Id*. Illustrating that dangerousness is a familiar and workable standard for courts to apply, *Williams* identified at least two contexts during a criminal case when a court already determines dangerousness: detention and whether to order a defendant to refrain from possessing a firearm while on probation or supervised release. *Id*. at 657.  The offense conduct also matters. As this Court has explained, an as-applied challenge "alleges that the application of the statute in the particular context in which he has acted ... would be unconstitutional." *Carroll v. City of Cleveland*, 522 F. App'x 299, 306 (6th Cir. 2013); *United States v. Perez-Garcia*, 96 F.4th 1166, 1177 (9th Cir. 2024) (as-applied challenge "means they contend only that the law violates their Second Amendment rights based on the facts of their particular cases"). That necessarily requires an examination of the particular factual context in which the defendant acted. *See United States v. Moore*, 111 F.4th 266,

272–73 (3d Cir. 2024) (an as-applied challenge requires consideration of the "particular person under particular circumstances"). In *Moore*, the Third Circuit rejected the notion that a court can consider only the facts alleged in the indictment in resolving an as-applied challenge holding that "'these particular circumstances' include facts beyond the predicate offenses alleged in the indictment." *Id*. at 273. The court emphasized that "the circumstances of a criminal offense can justify rejecting an as-applied challenge to a conviction regardless of whether they were charged [in the indictment]." *Id*. To successfully make an as-applied challenge, a defendant "must show that under these particular circumstances he was deprived of a constitutional right." *Id*.  One simple hypothetical illustrates why the facts of the charged offense are both relevant and critical to determining if a defendant was dangerous. Consider a felon who possesses a gun during a home invasion. If he's the homeowner possessing a gun to defend his family, that presents one picture. But if he's the guy breaking in with the gun, that paints a completely different picture. Violations of § 922(g)(1) are charged in a myriad of circumstances, and courts must look at those circumstances

19

to help decide whether a defendant can prove that he is not dangerous. The district court here was wrong to ignore them.

### D.    Williams cannot show that he is not dangerous.

Like in *Williams*, where the record showed that the defendant could not prove a lack of dangerousness to support his as-applied challenge, the record here demonstrates that Ronald Williams cannot meet that burden either. Because he is dangerous, § 922(g)(1) is constitutional as applied to him.

### 1.    Williams's murder convictions conclusively establish that he cannot show a lack of dangerousness.

Williams murdered two people using a gun, and one of them was a pregnant woman who was trying to flee from him. That these are dangerous and violent offenses should go without saying. Those offenses fall squarely within the first category of convictions—crimes against the person—that "speak directly to whether an individual is dangerous." *Williams*, at 658. Indeed, *Williams* indicated that such an offense "might create an irrebuttable presumption of dangerousness." *Id*. Here, Williams's convictions are the worst-of-the-worst and are precisely the kind that create an irrebuttable presumption of dangerousness. As

*Williams* observed, the Framers punished many of the offenses in this category with death. *Id.* (citing Chapter 9, 1 Congress, Public Law 1-9. 1 Stat. 112 (1790)). And first-degree murder continues to be an offense punishable by death. *See, e.g.,* 18 U.S.C. § 1111(b); Death Penalty Information Center, https://deathpenaltyinfo.org/states-landing (27 states have the death penalty) (last visited December 2, 2024). "[A]t the founding, the death penalty was a way of 'preventing crimes in the future' by "eliminat[ing] those too dangerous to have a place in society." *Williams*, 113 F.4th at 658. Committing a violent crime like murder (twice, no less) should be "totally dispositive on the question" of whether Ronald Williams is dangerous. *Id.*

But even if rebuttal was possible, the defendant's burden of showing a lack of dangerousness "would be extremely heavy." *Id.* And even then, only those individuals who "could demonstrate that they were not dangerous" could "restor[e] their ability to keep arms." *Id.* at 654. How Williams could meet such a burden is unimaginable. Incarcerated in prison for most of his adult life until he was paroled in late 2019, Williams remained under supervision on a life sentence and could not comply with the conditions of parole or even remain crime-

free. Instead, he possessed a loaded stolen gun along with cocaine. In *Williams*, this Court held that a conviction for *attempted* murder was alone enough to demonstrate dangerousness. *Id.* 662. Similarly, two homicide-related convictions, including an attempted second-degree murder offense, rendered one defendant "exactly the type of individual our history and tradition allow Congress to disarm." *United States v. Parham*, 119 F.4th 488, 496 (6th Cir. 2024). Here, Williams *actually* murdered two people, which is more than enough to demonstrate his dangerousness. If a convicted killer like Ronald Williams cannot be prohibited from possessing a firearm, then § 922(g)(1) is truly a nullity.

In sum, the serious nature of Williams's past crimes and the circumstances in which they were committed overwhelmingly establish his dangerousness. On this record, as in *Williams*, he cannot meet his high burden to show otherwise, making a remand for that purpose inappropriate, and the district court's decision sustaining his as-applied challenge must be reversed.

### 2.    Williams was on parole for murder and subject to a condition that he not possess firearms.

That Williams was on parole at the time he possessed the firearm here should be enough to reject his as-applied challenge. *Goins*, 118 F.4th at 805, 807 (Bush, J., concurring opinion) (citing *Moore*, 111 F.4th 266 (3d Cir. 2024)); *United States v. Taylor*, No. 23-5644, 2024 WL 4891756, *2 (6th Cir. Nov. 25, 2024) (being on probation at the time the defendant possessed firearms was "dispositive" under *Goins*). But here, there was more. Williams was on parole for committing two murders using a gun and was specifically ordered not to possess a firearm during the term of his parole. This easily satisfies *Goins* and independently requires reversal of the district court's order.

In *Goins*, this Court held that "three aspects" of the case compelled the conclusion that Congress could lawfully disarm Goins. *Goins*, 118 F.4th at 797. "First, Goins was in violation of the state probation condition that prohibited him from possessing a firearm at the time he did." *Id*. "[S]econd, Goins was under a relatively short probation sentence for a dangerous crime." *Id*. Goins was under a four-

year probationary term. *Id*. at 796. Finally, Goins's "repeated actions demonstrated a likelihood of future dangerous conduct." *Id*. at 797.

Those circumstances all exist here. Williams was subject to a similar parole condition, prohibiting him from possessing firearms at the time he possessed one. His parole term for his dangerous crimes was the same as in *Goins*—four years. And his history of dangerous conduct—committing two murders using a gun—is unequivocal. Williams was dangerous and he can't show otherwise.

Accordingly, just as "Congress could lawfully disarm Goins at the time he possessed the firearm," Congress could lawfully disarm Williams as well. *Goins*, 118 F.4th at 805. The district court erred in concluding otherwise.

## Conclusion

This Court should reverse the district court's order dismissing the indictment and remand the case with instructions to reinstate the indictment and proceed to trial.

Respectfully submitted,

Dawn N. Ison
United States Attorney

/s/ William J. Vailliencourt, Jr.
William J. Vailliencourt, Jr.
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9626
William.Vailliencourt@usdoj.gov

Dated: December 2, 2024

25

## Certificate of Service

I certify that on December 2, 2024, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Brandy Yolanda Robinson, brandy_robinson@fd.org

/s/ William J. Vailliencourt, Jr.
Assistant United States Attorney

26

# Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 23-cr-20201:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 01 | Indictment | 1–3 |
| 08 | Consent Order of Detention Pending Trial | 15 |
| 13 | Motion to Dismiss the Indictment of Second Amendment Violation | 29–56 |
| 16 | Government Response to Motion to Dismiss the Indictment | 59–86 |
| 17 | Order for Supplemental Briefing | 87–93 |
| 18 | Williams First Supplemental Brief | 94–96 |
| 19 | Government Supplemental Brief | 97–145 |
| 19-1 | Appendices to Government Supplemental Brief in Response to Motion to Dismiss | 146–174 |
| 22 | William Second Supplemental Brief in Support of Bruen Motion to Dismiss | 181–370 |
| 29 | Opinion & Order Granting Motion to Dismiss | 390–462 |
| 34 | Notice of Appeal by United States | 516–517 |