No. 24-1244

In the United States Court of Appeals
for the Sixth Circuit

───────────

# United States of America,

Plaintiff-Appellant,

v.

# Ronald Norvale Williams,

Defendant-Appellee.

───────────

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 23-cr-20201 (Hon. Judith E. Levy)

───────────

## Reply Brief for the United States

───────────


Julie A. Beck
Acting United States Attorney

William J. Vailliencourt, Jr.
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9626
William.Vailliencourt@usdoj.gov

# Table of Contents

Table of Authorities.................................................................ii

Argument...............................................................................1

I.   Section 922(g)(1) is facially valid under this Court's binding
     decision in United States v. Williams …………………………..1

II.  Section 922(g)(1) is not unconstitutionally overbroad....................2

III. *Williams*'s dangerousness standard does not render
     § 922(g)(1) unconstitutionally vague. .............................................5

IV.  Williams is a dangerous felon who can be constitutionally
     prohibited from possessing a firearm. ...........................................13

     A.   Williams's two murder convictions establish his
          dangerousness.......................................................................13

     B.   That § 922(g)(1) imposes "permanent" disarmament
          doesn't change the outcome given the short timeline here..16

     C.   An as-applied challenge requires consideration of the
          facts of the charged offense...................................................18

     D.   Williams's dangerousness is apparent from the existing
          record...................................................................................20

Conclusion .........................................................................................23

Certificate of Service .........................................................................24

i

# Table of Authorities

**Cases**

*Aptheker v. Secretary of State*, 378 U.S. 500 (1964) .................................4

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ..........................................5

*Kolender v. Lawson*, 461 U.S. 352 (1983) .................................................6

*Miller v. Alabama*, 567 U.S. 460 (2012)..................................................14

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ....................................3, 4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ................................................................19

*Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024)............... passim

*Samson v. California*, 547 U.S. 843 (2006)............................................15

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) ....................................3, 4

*Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016) ........................................................12

*United States v. (Erick) Williams*, No. 2:23-cr-20083, 2023 WL 8288973, (W.D. Tenn. Nov. 8, 2023).............................21

*United States v. Curry*, No. 22-11084, ___ F.4th ___, 2025 WL 80109 (5th Cir. Jan. 13, 2025).........................................3

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) ..............................2

*United States v. Gailes*, 118 F.4th 822 (6th Cir. 2024)...........................17

*United States v. Giglio*, No. 24-60047, ___ F.4th ___, 2025 WL 274968, *4 (5th Cir. Jan. 23, 2025) ................................21

*United States v. Goins*, 118 F.4th 794 (6th Cir. 2024) ......... 11, 15, 21, 22

**Cases**

*United States v. Hansen*, 599 U.S. 762 (2023) ........................................... 4

*United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024) ............................. 2

*United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024) ....................... 2

*United States v. Kernell*, 667 F.3d 746 (6th Cir. 2012) ......................... 5, 6

*United States v. Krumrei*, 258 F.3d 535 (6th Cir. 2001) ......................... 5

*United States v. Lopez*, 929 F.3d 783 (6th Cir. 2019) ............................. 5

*United States v. Moore*, 111 F.4th 266 (3d Cir. 2024) ........................... 19

*United States v. Morton*, 123 F.4th 492 (6th Cir. 2024) ....................... 11

*United States v. Quailes*, No. 23-2533, ___ F.4th ___,
    2025 WL 225486 (3d Cir. Jan. 17, 2025) ..................................... 21

*United States v. Rahimi*, 602 U.S. 680 (2024) .................................. 2, 4

*United States v. Salerno*, 481 U.S. 739 (1987) ................................ 2, 3, 4

*United States v. Thomas-Mathews*, 81 F.4th 530 (6th Cir. 2023) ........... 1

*United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) ............. passim

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ..................................................... 3, 4

**Statutes**

18 U.S.C. § 3142 ......................................................... 8

18 U.S.C. § 3553 ......................................................... 8

18 U.S.C. § 921(a)(20) .................................................. 17

18 U.S.C. § 922(g)(1)............................................................ passim

18 U.S.C. § 922(g)(4)............................................................ 12

18 U.S.C. § 922(g)(8)............................................................ 2

18 U.S.C. § 925(c) ............................................................... 9

Mich. Comp. Laws § 28.424(1) ............................................ 16

Mich. Comp. Laws § 28.424(4)(c) ........................................ 16

Mich. Comp. Laws § 712A.2(a) ........................................... 14

Mich. Comp. Laws § 750.224f(2)(a)(ii)–(iii) ........................ 15

Mich. Comp. Laws § 750.224f(2)(b) ..................................... 16

Mich. Comp. Laws § 769.25 ................................................. 14

Mich. Comp. Laws § 791.236(4) ........................................... 15

Mich. Comp. Laws § 791.238(1) ........................................... 17

Mich. Comp. Laws § 791.238(6) ........................................... 17

Public Act 113 of 2019 (Mich. 2019)..................................... 14

## Rules

Federal Rule of Evidence 201................................................ 20

Federal Rule of Evidence 609........................................... 14, 15

# Argument

## I.  Section 922(g)(1) is facially valid under this Court's binding decision in *United States v. Williams*.

Ronald Williams argues that this Court's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), is wrong and should be reversed. He asserts that 18 U.S.C. § 922(g)(1) is facially invalid—a claim that he specifically abandoned below. (R.17: Order Requiring Supplemental Briefing, 89 (directing Williams to specify whether he was asserting an as-applied challenge, a facial challenge, or both); R.18: Williams First Supplemental Brief, 94 (clarifying that Williams was raising only an as-applied challenge).

Despite Williams's objections, *Williams* is binding and must be followed by subsequent panels unless a decision by the Supreme Court or the en banc Sixth Circuit says otherwise. *United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023). And that cuts both ways. The United States maintains that § 922(g)(1) is constitutional in all of its applications, and not just as applied to "dangerous" people, consistent with the concurring opinion in *Williams*. *Id.* at 663–65 (Davis, J., concurring in judgment); *see also United States v. Jackson*,

110 F.4th 1120 (8th Cir. 2024) (rejecting felony-by-felony litigation after *Rahimi*); *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024) (following *Jackson*). But *Williams* is binding—both as to the statute's facial validity and the dangerousness test for as-applied challenges—and it requires reversal of the district court's decision here.

## II.     Section 922(g)(1) is not unconstitutionally overbroad.

Williams claims that § 922(g)(1) is facially unconstitutional because it is overbroad, i.e., it might be unconstitutional in some applications. But Williams misunderstands the overbreadth doctrine.

In holding that § 922(g)(1) is facially valid, *Williams* merely applied the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. 680 (2024). In *Rahimi*, the Supreme Court held that a facial challenge to § 922(g)(4) fails unless a defendant can "establish that no set of circumstances exists under which the Act would be valid." *Id*. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In *Williams*, this Court correctly held that the defendant's facial challenge to § 922(g)(1) failed because the statute is constitutional in at least "one of its applications." *Williams*, 113 F.4th at 643 (citing *Rahimi*); *see also United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024); *United*

*States v. Curry*, No. 22-11084, ___ F.4th ___, 2025 WL 80109, *2 (5th Cir. Jan. 13, 2025).

Despite this, Williams asserts that because § 922(g)(1) might be unconstitutional in some applications, it is overbroad and thus facially invalid. But overbreadth is a First Amendment doctrine. This Court has emphasized that the general rule governing facial challenges—that a challenger must show the statute invalid in every application—applies unless it falls within an exception for challenges based on the First Amendment. *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013); *see also Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 n.6 (2008) (recognizing that overbreadth is a type of facial challenge raised in the First Amendment context); *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."). And most recently, the Supreme Court reaffirmed that the overbreadth doctrine applies only in the First Amendment context. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). In other cases, like this one, facial challenges are governed by the *Salerno* standard. *Id.*

Ignoring these cases, Williams instead relies on a 1964 opinion invalidating a law barring Communist Party members from obtaining or using a passport. *Aptheker v. Secretary of State*, 378 U.S. 500 (1964). But even there, the Supreme Court described the freedom-to-travel claim as "closely related to [First Amendment] rights of free speech and association." *Id.* at 517. Thus, *Aptheker* did not purport to extend the overbreadth doctrine to other contexts. And the Supreme Court's subsequent decisions in *Salerno*, *Washington State Grange*, *Rahimi*, and *NetChoice* leave no room to argue otherwise. Williams relies on *United States v. Hansen*, 599 U.S. 762 (2023), but that case only proves the point. (Williams Br. 34). *Hansen* involved a First Amendment challenge, and the Supreme Court explained that overbreadth is an unusual doctrine that applies to prevent the chilling of constitutionally protected speech. *Hansen*, 599 U.S. at 769–70. Here, because this case involves a Second Amendment challenge, the overbreadth doctrine just doesn't apply.

Moreover, even in the First Amendment context, a statute is not considered overbroad "when a limiting construction has been or could be placed on the challenged statute." *Speet*, 726 F.3d at 879 (quoting

4

*Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). And that is precisely what this Court did in *Williams* by allowing an as-applied challenge by a defendant who claims that he is not dangerous.

### III. *Williams*'s dangerousness standard does not render § 922(g)(1) unconstitutionally vague.

Williams's claim that the dangerousness standard adopted in *Williams* is "void" for being both "vague and unworkable" similarly lacks merit. This Court has made clear that "[t]he void-for-vagueness doctrine … focuses on the actions of Congress, not the other branches." *United States v. Lopez*, 929 F.3d 783, 785 (6th Cir. 2019). "For challenges … that do not implicate First Amendment concerns, the defendant bears the burden of establishing that the *statute* is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (internal quotation and citation omitted) (emphasis added); *see also United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (vagueness challenges to statutes that do not involve the First Amendment must be examined in light of the specific facts of the case).

Critically, *Williams* articulates a *judicial* test to guide courts when considering an as-applied challenge. Consistent with history, the test requires a defendant to prove that he is not dangerous for his challenge to succeed. *Williams*, 113 F.4th at 657; *see also Range v. Attorney General*, 124 F.4th 218, 252–67, 273–77 (3d Cir. 2024) (en banc after remand) (Krause, J., concurring in judgment) (summarizing historical basis for requiring a person prohibited from possessing a firearm to show the prohibition should be lifted). Williams, however, confuses that judicial standard with the fair-notice required to establish a vagueness challenge to a statute. Those are two different creatures, and he cites no authority permitting them to be used interchangeably.

"A criminal statute is unconstitutionally vague if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *Kernell*, 667 F.3d at 750 (6th Cir. 2012). As the Supreme Court has explained, an important part of the vagueness doctrine is that "a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (internal quotation marks

omitted). Such guidelines are necessary to prevent "policemen, prosecutors, and juries to pursue their personal predilections." *Id.*

Here, § 922(g)(1) provides more than adequate notice of the conduct it prohibits—it applies to persons convicted of certain crimes punishable by more than a year imprisonment. *Williams* doesn't change that. The dangerous person standard doesn't implicate the vagueness doctrine. Instead, it merely created a judicial roadmap for a defendant to litigate an as-applied challenge in a criminal case.

Perhaps anticipating a challenge to its "dangerousness" standard, *Williams* effectively preempted it, noting that "[d]istrict courts are well-versed in addressing challenges like these" and expressing confidence "that the dangerousness inquiry is workable for resolving as-applied challenges to § 922(g)(1)." *Williams*, 113 F.4th at 660 (citations omitted). *Williams* further recognized that "[district courts] already determine whether a given defendant is dangerous in multiple situations," including when "deciding whether to release a defendant before trial." *Id.* at 657. For example, "[j]udges deciding whether to release a defendant before trial must consider whether that defendant will 'endanger the safety of any other person or the community.'" *Id.*

(quoting 18 U.S.C. § 3142). While Williams claims that this permits courts to consider "unproven allegations" (Williams Br. 31), the release-or-detain considerations in § 3142(f) require proof of dangerousness. And "dangerousness comes up at least twice [during sentencing]: when the judge balances the 18 U.S.C. § 3553 sentencing factors, including the need to protect the public, and when he determines whether a defendant must refrain from possessing a firearm while on probation or supervised release." *Id.* (internal quotation and citation omitted).

Determining whether a defendant is dangerous isn't a new inquiry. *See Range*, 124 F.4th at 277 (Krause, J., concurring in judgment) ("Evaluating whether a felon has met that burden [of showing why he should not be disarmed] is not an unfamiliar exercise for federal judges."). Looking to history, "[i]n determining whether an individual has met his burden to demonstrate that he is not dangerous," a court acts "much like the officials of old [by] focus[ing] on each individual's specific characteristics." *Williams*, 113 F.4th at 657. That a standard is old and well-established contradicts any notion that it is vague or unworkable. That the standard might be hard for a defendant like Williams to meet doesn't make it invalid.

Williams further complains that *Williams* places the burden on him to show that he should not be disarmed, but that too is consistent with history and tradition. *Id.* at 654 ("Just as with the English statutes of days past, these colonial laws often gave alleged loyalists the chance to demonstrate they were not dangerous."); *id.* at 657 ("Each time [governments disarmed a class], however, individuals could demonstrate that their particular possession of a weapon posed no danger to peace."). *See also Range*, 124 F.4th at 277 (Krause, J., concurring in judgment) ("[S]ection 922(g)(1) … places the burden on … a convicted felon seeking to re-arm … to rebut the presumption that he still poses [a] risk [of misusing firearms]."). And this Court even cited, with approval, a statutory scheme that requires a felon to show that he "will not be likely to act in a manner dangerous to the public safety" to regain his rights to possess a firearm. *Williams*, 113 F.4th at 661 (quoting 18 U.S.C. § 925(c)). *Williams* properly placed the burden to show a lack of dangerousness on the person bringing the as-applied challenge.

Williams further criticizes this Court's analysis of the three categories of crimes used to assess dangerousness. But in doing so,

Williams misstates the standard. It is not the category of the prior conviction that determines if a person can be disarmed. The felony conviction alone does that. Instead, this Court explained, "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id*. at 658. Thus, the prior convictions and the nature of a defendant's conduct *informs* the dangerousness determination; it doesn't dictate it.

Williams suggests that this is tantamount to a categorical approach, but *Williams* explicitly rejected that idea: "[W]e don't mean to suggest that courts facing as-applied challenges must find 'categorical' matches to show a defendant is dangerous." *Id*. at 660. To the contrary, *Williams* emphasized that broad scope of evidence to be considered.  In making the dangerousness determination, a court "must focus on each individual's specific characteristics." *Id*. at 657. The inquiry "necessarily requires considering the individual's entire criminal record—not just the offense for purposes of § 922(g)(1)." *Id*. at 657–58.

In some cases, the prior convictions and their underlying facts will alone be sufficient to resolve the case. This is one of those cases. In others, courts will want to consider other relevant information. *Id*. at

658 n.12. Focusing on an individual's "characteristics" means it's a broad inquiry. While "in many instances … the dangerousness will be self-evident," *id*. at 660, courts can consider the facts underlying prior convictions, just like this Court did in *Williams*. *Id*. at 662 (describing facts of prior robbery and felon-in-possession convictions). *Williams* held that dangerousness is a "fact-specific" inquiry depending on the "unique circumstances of the individual defendant." *Id*. It is not the categorical approach that Williams claims it to be. (Williams Br. 38). *See United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024) (observing that *Williams* rejected a categorical approach).

Williams also criticizes this Court's opinion in *United States v. Goins*, 118 F.4th 794 (6th Cir. 2024). But just like *Williams*, *Goins* is binding. And there, in determining that the defendant was dangerous, this Court cited prior arrests and misdemeanor convictions as well as the facts underlying those incidents. *Id*. at 796–97, 804.

Finally, Williams claims that *Williams* creates some kind of fair-notice problem because a convicted felon cannot know if he is dangerous or not. But dangerousness is not an element of a violation of § 922(g)(1), and *Williams* didn't make it one. It's not even an affirmative defense.

The statute is clear in its sweep and provides fair notice of what it prohibits: convicted felons can't possess firearms. *Williams* instructs that felons are *already* constitutionally disarmed by § 922(g)(1). Courts are tasked only with determining whether "individuals in a disarmed class"—here, felons—can "prove they aren't dangerous in order to regain their right to possess arms." *Williams*, 113 F.4th at 661–62. If Williams had wanted to know if he could regain his right to possess a firearm, he could have easily done what one felon in the Third Circuit did: file a declaratory judgment action claiming that § 922(g)(1) was unconstitutional as applied to him. *See Range*, 124 F.4th at 223; *see also Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016) (en banc) (permitting petitioner to seek declaratory judgment that § 922(g)(4) was unconstitutional as applied to him); *Bailey v. Garland*, 6th Cir. No. 24-3752 (appeal involving petition seeking civil declaratory judgment that § 922(g)(1) could not be enforced against petitioner). In fact, some judges would hold that a civil pre-enforcement challenge is the only manner of raising this kind of issue. *See Range*, 124 F.4th at 250–290 (Krause, J., concurring in judgment and Roth, J., concurring in the judgment). But instead of seeking permission *before* possessing a

firearm, Williams chose to seek after-the-fact forgiveness following an indictment. His choice to wait has consequences—namely, the risk that a court will reject his as-applied challenge in light of his new criminal behavior.

## IV. Williams is a dangerous felon who can be constitutionally prohibited from possessing a firearm.

### A. Williams's two murder convictions establish his dangerousness.

Ronald Williams ignores the most critical facts in this case. He killed two people—one of them a pregnant woman—using a gun. In his view, that fact merits but a single sterile sentence 27 pages into his brief. (Williams Br. 27). And that he was on parole from a life sentence when he was caught with another gun isn't even mentioned. That he was convicted of two murders and was on parole for those offenses makes this an easy case.

In an attempt to refute the evidence that he is dangerous—as opposed to meeting *his* burden of proving he is *not* dangerous—Williams argues that his age at the time of the murders, along with the 29 years he served in prison, has low probative value in assessing his dangerousness. That he was 17 years old when he committed those

murders doesn't mitigate the violence of those crimes.[1] And it doesn't mean that he is not dangerous. Instead, his age merely provided him the opportunity to escape from a mandatory life-without-parole sentence for his first-degree murder conviction. *See Miller v. Alabama*, 567 U.S. 460 (2012); Mich. Comp. Laws § 769.25. But rather than take advantage of that opportunity, Williams chose to possess a gun and drugs while on parole for two murders.

Murder is an offense that should be, under *Williams*, an automatic and permanent disqualification for possessing firearms. Just as at the time of the founding, murder continues to be punishable by death. Williams ignores that reality to water down the fact that an offense that remains punishable by death supports "an irrebuttable presumption of dangerous." *Williams*, 113 F.4th at 658. In a further attempt to minimize the danger that convicted killers pose, Williams points to Federal Rule of Evidence 609 claiming that because an old conviction doesn't reflect on a person's credibility after more than 10 years old, it

---

[1] At the time of the murders, 17-year-olds were considered adults for criminal charges under Michigan law. That only changed in 2021 when the age was raised to 18. *See* Mich. Comp. Laws § 712A.2(a); Public Act 113 of 2019 (Mich. 2019).

doesn't indicate dangerousness. *See* Fed. R. Evid. 609(b). But that Williams spent 29 years in prison can't be ignored. Even Rule 609(b) provides that calculation of the 10-year-period uses a defendant's "release from confinement." Here, very little time elapsed from Williams's release—he was still on parole and subject to a condition that he not possess a firearm. As this Court has recognized, "parolees are more likely to commit future criminal offenses." *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024) (quoting *Samson v. California*, 547 U.S. 843, 853 (2006)). And "the state's interest in protecting the public is even higher [when a person is on parole] ... given high rates of recidivism." *Id.* at 803 (citing *Samson*, 547 U.S. at 853–54). Moreover, parole conditions are "individualized" and address the "assessed risks" of the parolee. Mich. Comp. Laws § 791.236(4). And the Michigan parole board's assessment of his risks triggered the imposition of a parole condition that he not possess firearms. Moreover, while Michigan law would permit Williams the opportunity to restore his firearm rights, he must wait until at least five years after he has served "all terms of imprisonment" and "successfully completed all conditions of ... parole imposed for the violation." Mich. Comp. Laws § 750.224f(2)(a)(ii)–(iii).

In addition, a felon like Williams would have to obtain the restoration of his firearm rights by petitioning a state circuit court and establish that his "record and reputation are such that [he] is not likely to act in a manner dangerous to the safety of other individuals." Mich. Comp. Laws §§ 750.224f(2)(b); § 28.424(1) & § (4)(c).

Williams cannot establish that he is not dangerous in light of his two murder convictions.

## B. That § 922(g)(1) imposes "permanent" disarmament doesn't change the outcome given the short timeline here.

Williams is also critical of § 922(g)(1)'s "permanent" disarmament. But Williams was released on parole in December 2019 and possessed the gun here in March 2023. (R.19-1: App. to Gov't Supp. Br., 152; R.1: Indictment, 1). Maybe a felon with a decades-old conviction who has been a model citizen while in the community and not serving a sentence could gain some traction with that argument. But that's not what we have here. Williams possessed a firearm a little more than three years after his release and while still on parole. Under Michigan law, as a parolee Williams was still "in the legal custody and under the control of the [Michigan Department of Corrections]." Mich. Comp. Laws

§ 791.238(1); *see also* Mich. Comp. Laws § 791.238(6) ("A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court …").

An as-applied challenge requires consideration of a defendant's specific characteristics, not the speculative and hypothetical circumstances years in the future. That the disqualification *might* end up being permanent is not relevant so soon after his being released from prison on parole. In any event, as this Court has recognized, *Williams* upheld a permanent ban. *United States v. Gailes*, 118 F.4th 822, 829 (6th Cir. 2024) (citing *Williams*, 113 F.4th at 662–63). And "the purported permanent ban … may not always be so." *Id.*; *see* 18 U.S.C. § 921(a)(20) ("Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.").

## C. An as-applied challenge requires consideration of the facts of the charged offense.

Finally, Williams argues that the facts of the charged offense are irrelevant to assessing dangerousness. But the Court need not even wade into that because—just like *Williams*—the record of his prior convictions easily resolves the dangerousness question. His charged offense conduct simply reinforces and further demonstrates what his prior convictions show—Williams cannot demonstrate that he is not dangerous.

In any event, Williams ignores the fundamental point that he is raising an "as applied" challenge. As applied to what? Criminal statutes are not applied in a vacuum. Nor are they even applied to specific people. Instead, they are applied to specific individuals engaging in specific conduct in specific circumstances. That those circumstances might make it difficult for a felon to prove that he is not dangerous is not an appropriate reason to sanitize what a court can consider. Williams does not refute this common-sense principle that an as-applied challenge requires consideration of the "particular person under

particular circumstances." *See United States v. Moore*, 111 F.4th 266, 272–73 (3d Cir. 2024).

The Supreme Court also made that clear in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The Court asked two questions. Were the two petitioners part of "the people" to whom the Second Amendment protects? And did the Second Amendment protect their proposed course of conduct? *Id.* at 31–32; *see also Range*, 124 F.4th at 225 ("After *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct."). In an action seeking declaratory relief, the court assesses the proposed conduct. But here, where the challenge involves conduct that the defendant has already committed, there's no need to rely on a petitioner's claim of what he intends to do. We already know because the defendant has been indicted for it. And it's in *that* factual context that the challenge must be assessed.

Moreover, while *Williams* discussed "judicially noticeable information," it did so only in the context of broadening the scope of facts that a court can consider with respect to prior convictions. *Williams*, 113 F.4th at 660. With that expansion in that context, this

Court did not—as Williams claims—limit courts only to consideration of things like the weather or a defendant's age under the narrow confines of Fed. R. Evid. 201. Instead, this Court "recognized that courts may wish to consider information beyond criminal convictions when assessing dangerousness" and imposed no restriction on what "relevant" information courts could consider. *Id.* at 658 n.12. That a court is permitted to take judicial notice of certain things simply identifies an additional source of information on which a court can rely to decide dangerousness; it doesn't establish judicial notice as the exclusive source. *Williams* did not prohibit a court from considering the surrounding circumstances of a defendant's firearm possession.

### D. Williams's dangerousness is apparent from the existing record.

Williams acknowledges that the constitutionality of § 922(g)(1) as applied to him is a legal question reviewed de novo. In *Williams*, this Court rejected the defendant's as-applied challenge based on the dangerousness standard that it announced. The district court in that case had never weighed in on the question of dangerousness or even mentioned what the defendant's prior convictions were—other than to observe that they weren't for rebellion or treason. *United States v.*

*(Erick) Williams*, No. 2:23-cr-20083, 2023 WL 8288973, *5–*6 (W.D. Tenn. Nov. 8, 2023). Still, this Court concluded—based on its own examination of the record—that any one of the defendant's prior convictions in his criminal record was enough to demonstrate his dangerousness. *Williams*, 113 F.4th at 662. The same can be said here, except that the evidence of dangerousness is even more compelling because Ronald Williams was on parole for two counts of murder—serving a life sentence on one of those counts—and subject to a parole condition that he not possess firearms. Williams cannot just casually dismiss that fact, which brings him squarely within *Goins*. Under *Goins*, Williams's parole status and conditions are outcome-determinative. *See also United States v. Quailes*, No. 23-2533, ___ F.4th ___, 2025 WL 225486 (3d Cir. Jan. 17, 2025) (a person on probation or parole does not have a Second Amendment right to possess a firearm); *United States v. Giglio*, No. 24-60047, ___ F.4th ___, 2025 WL 274968, *4 (5th Cir. Jan. 23, 2025) ("[T]he government may disarm those who continue to serve sentences for felony convictions."). Congress can constitutionally prohibit a person like Williams—who was still serving his sentences for murder—from possessing a firearm.

Like in *Williams*, the record here demonstrates that Ronald Williams cannot meet the burden to show a lack of dangerousness. And like in *Goins*, depriving a convicted felon of his Second Amendment right as a part of his parole for those murders "comports with … historical tradition." *Goins*, 118 F.4th at 803. Thus, § 922(g)(1) is constitutional as applied to him. Remand for the district court to answer the legal question of whether the Second Amendment bars Congress from prohibiting Williams from possessing a firearm is unnecessary. Both *Goins* and *Williams*, on this record, require reversal of the district court's order.

## Conclusion

This Court should reverse the district court's order dismissing the indictment and remand the case with instructions to reinstate the indictment and proceed to trial.

Respectfully submitted,

Julie A. Beck
Acting United States Attorney

/s/ William J. Vailliencourt, Jr.
William J. Vailliencourt, Jr.
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9626
William.Vailliencourt@usdoj.gov

Dated: January 28, 2025

## Certificate of Service

I certify that on January 28, 2025, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Benton Martin, Benton_Martin@fd.org
Celeste Kinney, Celeste_Kinney@fd.org

/s/ William J. Vailliencourt, Jr.
Assistant United States Attorney